UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SALOMON JUAN MARCOS VILLARREAL,

        Plaintiff(s),

v.

UNITED STATES OF AMERICA,

        Defendant(s).

2:11-CV-1594 JCM (GWF)

**ORDER**

Presently before the court is petitioner Salomón Juan Marcos Villarreal's motion for stay pending appeal. (Doc. #51). Respondent United States filed a response. (Doc. #55). Villarreal replied. (Doc. #57).

**I.    Background**

An official with the taxing authority for Mexico, the Servico de Administracion Tributaria ("SAT"), requested the Internal Revenue Service ("IRS"), pursuant to the United States and Mexico's tax information exchange treaty agreement ("TIEA"), to obtain certain bank records from petitioner. SAT believes that petitioner used two entities, Immobiliaria Puertas del Norte, S.A. de C.V. ("Immobiliara") and Bull Denim, S.A. de C.V. ("Bull Denim") in conjunction with the U.S. entity Rambas Marketing Company LLC ("Rambas") to falsely gain value added tax refunds and to evade income and corporate tax obligations. The IRS issued a summons to Bank of America seeking the relevant account information.

Petitioner filed the petition to quash summons by the IRS. (*See* doc. # 46). Respondent then moved for summary judgement denying the petition to quash and for enforcement of the summons. (*See* docs. # 39-40). This court granted respondent's motion for summary judgement. (*See* doc. # 48). Petitioner now moves the court to stay enforcement of the order pending appeal to the Ninth Circuit. (Doc. # 51).

**II.     Legal Standard**

The court may grant a stay of proceedings pending an appeal. *See* Fed. R. Civ. P. 62 ©. A court considers four factors: "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

**III.    Discussion**

   *A.     Strong showing of likelihood of success on the merits*

Petitioner must make a *strong* showing that he will succeed on the merits of his case. *Id.* at 434 (emphasis added).

      1.     Standard of review

The Ninth Circuit will reverse a district court's decision to enforce an IRS summons only if clearly erroneous. *U.S. v. Kersting*, 891 F.2d 1407, 1410 (1989) (citing *Ponsford v. United States*, 771 F.2d 1305, 1307 (9th Cir. 1985)), *rev'd on other grounds, U.S. v. Carter*, 117 F.3d 396 (9th Cir. 1994).

      2.     Elements of enforcement

In a judicial review of a summons, the IRS need not satisfy a probable cause standard; rather, "the IRS need only demonstrate good faith in issuing the summons." *United States v. Stuart*, 489 U.S. 353, 359 (1989). The IRS must show: (1) "the investigation will be conducted pursuant to a legitimate purpose"; (2) "the inquiry may be relevant to the purpose"; (3) "the information sought is not already within the [IRS's] possession"; and (4) the IRS has satisfied all administrative steps.

*Id.* (quoting *United States v. Powell*, 379 U.S. 48, 57-58 (1964)). Additionally, "[t]he same test applies where the IRS issues a summons at the request of a treaty partner." *Lidas, Inc. v. United States*, 238 F.3d 1076, 1082 (9th Cir. 2001). "In such a case, the IRS need not establish the good faith of the requesting nation. So long as the IRS itself acts in good faith under *Powell* . . . and complies with applicable statutes, it is entitled to enforcement of its summons." *Id.* (internal citations and quotations omitted).

This court analyzed these factors in the granting of respondent's motion to enforce summons and found the IRS satisfied the *Powell* test. (*See* doc. #48). Petitioner's motion to stay makes the same arguments as he made in the summary judgment motions previously before the court. Nothing has changed and the court agrees with its prior findings and order.

Regarding factor one, which this court already decided (*see* doc. # 48), the summons was issued for a legitimate purpose because the IRS is attempting to comply with the TIEA. Assisting in an investigation conducted by a foreign tax authority is a legitimate purpose. *Mazurek*, 271 F.3d at 230.

This court has also found factor two to be satisfied. (*See* doc. # 48). The information sought by the IRS on behalf of the SAT is relevant because the SAT indicated that petitioner was the general director of Bull Denim and that he directed transfers from a Bull Denim account to Rambas. The court finds this inquiry relevant to the purpose of the case at bar.

For factor three, which this court already decided (*see* doc. # 48), the information sought was not already in the possession of either the IRS or SAT prior to the issuance of the enforcement summons. The IRS has submitted affidavits that it was not in possession of the requested Bank of America documents prior to the issuance of the summons and petitioner does not further contest this factor.

For factor four, which this court already decided (*see* doc. # 48), the IRS issued the summons in full compliance with all IRS administrative procedures and fully informed petitioner of its issuance. The IRS has attached affidavits detailing its step by step compliance with all applicable administrative procedures. There appears to have been no change of procedure since petitioner's

**James C. Mahan**
**U.S. District Judge**

- 3 -

filing of the motion to stay.

Petitioner argues numerous instances of a lack of good faith on part of the SAT. (Doc. # 51). However, "[t]he same test applies where the IRS issues a summons at the request of a treaty partner." *Lidas, Inc., v. United States*, 238 F.3d 1076, 1082 (9th Cir. 2001). "In such a case, the IRS need not establish the good faith of the requesting nation. So long as the IRS itself acts in good faith under *Powell* . . . and complies with applicable statutes, it is entitled to enforcement of its summons." *Id.* (internal citations and quotations omitted).

In summary, nothing has changed that would persuade this court that petitioner has a likelihood of success on the merits. Petitioner has presented no new arguments. He has not made a strong showing of a likelihood of success on the merits.

### 3. Tenth circuit case

This exact petitioner made very similar arguments concerning a summons request by the IRS on behalf of the SAT regarding a bank account in a Colorado federal court. *See Villarreal v. United States*, no. 12-1131, 2013 WL 1715432 (10th Cir. 2013). The Tenth Circuit case had the same parties, similar facts, and applied the same legal standard. Analyzing the four factor "good faith" standard from *Powell*, the Tenth Circuit affirmed the district court's decision to enforce the summons. *Id.* at *2, *5. Given the very similar case in which the Tenth Circuit upheld the district court's enforcement of the summons and rejected petitioner's arguments (almost identical arguments he made to this court), the likelihood of his success on the merits in the Ninth Circuit is unlikely.

In sum, petitioner cannot make a strong showing that he will succeed on the merits, and it is doubtful the Ninth Circuit will find this court's decision to enforce the IRS summons to rise to the level of "clearly erroneous," based on the *Powell* test and the Tenth Circuit case.

### 4. Evidentiary hearing

Additionally, petitioner argues that he was entitled to an evidentiary hearing, and as a result of this court's denial, (doc. # 48), he is likely to succeed on appeal. (Doc. # 51). Petitioner relies on *United States v. Stuckey*, claiming that an evidentiary hearing and discovery is a critical safeguard for a taxpayer. 646 F.2d 1369, 1373-74. (9th Cir. 1981). However, *Stuckey* also recognized that

discovery in a summary enforcement is "the exception rather than the rule." 646 F.2d at 1374 (citing *United States v. Church of Scientology of Cal.*, 520 F.2d 818, 824 (9th Cir. 1975)).

"At a minimum, the taxpayer is entitled to discover . . . the nature of the contacts between the agents and the Government." *Stuckey*, 646 F.2d at 1374. Petitioner challenges the link between Bull Denim and Rambas, (doc. # 51), but the court already heard and rejected these arguments in its previous order. (*See* Doc. # 48). Petitioner offers no new evidence nor a single citation to any affidavits he references. Further, in the underlying motion, petitioner had no actual evidence. He made only conclusory statements in self-serving affidavits based "upon information and belief." (Doc. # 51). The IRS has already demonstrated a good faith basis for the link. (*See* doc. #39, p.5-14; doc. #47, p. 8-17). Additionally, as analyzed under section III.A.2, *supra*, this court has also found good faith on part of the IRS.

Petitioner's (lack of) evidence cannot change or alter this court's findings. The government has an overwhelming amount of proper good faith evidence, and petitioner has only self-serving affidavits. Self-serving affidavits alone are not enough to convince the court that petitioner is entitled to an evidentiary hearing. The court has already rejected this argument and does so for the second time.

    *B.*    *Irreparable harm to petitioner*

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 434 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672).

First, petitioner argues this situation is similar to *Vesco v. SEC*, 462 F.2d 1350 (3d Cir. 1972), where the court dismissed the appeal as moot after Vesco complied with a subpoena. "In *Vesco*, the plaintiffs resisted compliance with an SEC subpoena requiring disclosure of certain documents on the ground that such disclosure would subject them to criminal penalties under Swiss law." *Gluck v. United States*, 771 F.2d 750, 754 (3d Cir. 1985). "In *Vesco*, the very act of surrendering the documents was the critical issue because, it was alleged, that gave rise to criminal liability under Swiss bank secrecy law. Once the plaintiffs had complied with the subpoena, no judgment of [the appellate court] could absolve Vesco of any liability or prevent action by the Swiss authorities."

- 5 -

*Gluck*, 771 F.2d at 753-54.

However, this case is not identical to *Vesco*. Petitioner has never alleged that he is liable under any Mexican laws, tax laws or any other, such that turning over the requested bank documents effectively guarantees liability under those foreign laws. Petitioner has been conspicuously silent on the legal consequences that may result from the information in the summoned bank records. This is significant for two reasons. First, the situation is inapposite from *Vesco* and the reasoning in *Vesco* does not apply. Second, petitioner has not actually shown any irreparable harm because all this court may infer that could happen from turning over the documents is that the SAT *may* began an investigation. That an investigation might occur or there may be criminal liability is hardly irreparable harm. In fact, the Supreme Court has stated that the possibility of irreparable harm is too lenient, rather irreparable injury must be *likely* in order to establish irreparable harm. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

Second, petitioner argues that he will be irreparably harmed if his motion for stay is denied because his appeal will become moot, therefore denying him the opportunity to pursue an appeal. (Doc. #51). In *Church of Scientology of California v. United States*, the Supreme Court held that compliance with an IRS' summons enforcement does not render the appeal of the appellant challenging compliance moot. 506 U.S. 9, 9 (1992). The Court reasoned:

> While a court may not be able to return the parties to the status quo ante–there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the tapes–a court can fashion some form of meaningful relief in circumstances such as these. . . . Indeed, that the [appellant] considers the information contained [in the summoned materials] important is demonstrated by the long, contentious history of this litigation. Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the [summoned materials], a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have it its possession. The availability of this possible remedy is sufficient to prevent this case from being moot.

*Id.* at 12-13.

In sum, in *Church of Scientology*, the Supreme Court stated that an appeal is not moot if a party is required to turn over certain documents to the IRS because courts may fashion some form

of relief–i.e., courts could require the executive branch, the IRS in this case, to return or destroy the materials. *See id.*

In this case, the situation is subtly different.[1] Here, the IRS will presumably turn over the documents to a foreign nation's taxing authority (Mexico's SAT in this case). The remaining question thus becomes whether a court fashion some form of relief if it orders the IRS to destroy or return whatever copies it may have but a foreign country's agency still retains the contested materials because it is outside the jurisdiction of a United States court.

Petitioner has alleged bad faith on the part of both the IRS and SAT in attempting to summon the bank documents. (Doc. # 51). The court looks only to the good faith of the IRS in enforcing a summons. *See Lidas,* 238 F.3d at 1082 ("So long as the IRS itself acts in good faith under *Powell* . . . ."). Any alleged bad faith on the part of the requesting, and foreign, nation is irrelevant. *See id.* ("the IRS need not establish the good faith of the requesting nation"). It is true that this court, or the appellate court, could not require a foreign country's government to destroy or return the summoned materials. However, the bad faith on the part of the requesting nation was always an irrelevant consideration.

In any event, in this case, comity and Mexico's obligations under the TIEA treaty suggest that, at the very least, the United States would request that the Mexican government destroy or return the records. *See generally Hilton v. Guyot*, 159 U.S. 113 (1895) (defining comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws."). If the United States obtained records from a foreign nation in a procedurally invalid manner under that foreign nation's laws, comity would oblige the United States to comply with a treaty partner's request of either destroying or returning the documents. Comity and TIEA treaty cooperation and obligations suggest that Mexico would comply with the same request to return or destroy materials if requested to do so by

---

[1] The parties admit in their briefing that there does not appear to be a case completely analogous to this one. After conducting its own research, the court agrees.

the United States because courts later found the manner the executive branch obtained the records to be procedurally invalid.

However, even if Mexico did not comply with the United States' request, the good faith of the foreign nation is irrelevant and the court's order mandating that the IRS return or destroy the summoned materials would satisfy the partial remedy guaranteed by *Church of Scientology*. *Id.* at 13 ("a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession. The availability of this possible remedy is sufficient to prevent this case from being moot.").

This court, or the Ninth Circuit (if petitioner were to prevail on appeal), could still fashion some form of relief to petitioner because either court could require the IRS to return and/or destroy any material gained through the summons. This rule applies even if the documents are outside of the jurisdiction of the United States because the court's partial remedy would prevent the United States government from using any information learned through the summoned materials as part of an investigation. As a treaty partner, it would be expected that Mexico would comply with the judicial and executive requests of the United States and either return or destroy the information.

Petitioner has not made a sufficient showing that he will suffer irreparable harm because his case will not become moot if this court denies the motion to stay.

*3. Substantial injury to the United States and the public*

The court need not address elements three and four because petitioner has not made the necessary showing of both likelihood of success on the merits and irreparable harm. "The first two factors of the traditional [motion to stay] standard are the most critical. *Nken*, 556 U.S. at 434. Since the factors are conjunctive, the failure to meet the first two factors render the remaining factors insignificant.

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that petitioner's motion for stay pending appeal (doc. # 51) be, and the same hereby, is DENIED.

DATED June 21, 2013.

*/s/ James C. Mahan*
**UNITED STATES DISTRICT JUDGE**